UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>)<br>v. )<br>)<br>CLIFTON JACKSON, )<br>)<br>Defendant. ) | Case No. 1:13-cr-98 |

**OPINION AND ORDER ON MOTION TO WITHDRAW FILED BY ATTORNEY
DAVID COTTER AND MOTION TO DISMISS COUNSEL FILED BY DEFENDANT
CLIFTON JACKSON
(Docs. 117, 118)**

Following a two-week trial, defendant Clifton Jackson was convicted on January 23, 2015 of fifty-eight felony counts. The charges against him concern a conspiracy to file fraudulent tax returns in order to obtain refunds. Much of the evidence against Jackson consists of testimony from co-defendants, especially Destinee McBride and her brother DeWayne Vass. Jackson is currently awaiting sentencing, which is scheduled for June 29, 2015.

The relationship between Jackson and his appointed attorney David Cotter has been strained for some time due to Jackson's determination to file his own pleadings with the court. The most recent of such filings, dated April 24 and April 29, 2015, contain allegations of ineffective assistance of counsel and prosecutorial misconduct in withholding discovery from the defense. (Doc. 117.) The documents include a request for the dismissal of Cotter from the case. (*Id.* at 54.)

In response, attorney Cotter has moved to withdraw as counsel for Jackson. He cites an actual conflict of interest. (Doc. 118 at 3.)

### I. Facts

Jackson was indicted on April 26, 2013 on sixty-six counts, including one count of conspiracy to unlawfully use social security numbers, one count of conspiracy to defraud the government, twenty-two counts of making false claims, twenty counts of social security fraud, one count of theft of government property, and twenty counts of aggravated identity theft. The other co-defendants were DeWayne Vass, Destinee McBride, and Sheri Becirovic. All pled guilty prior to Jackson's trial.

The trial commenced on January 13, 2015. The witnesses can be divided into three groups:
 (1) Co-defendants such as McBride and Vass, who testified that they worked with Jackson in filing or attempting to file approximately eighty-five false tax returns on TurboTax;
 (2) People whose social security numbers and other personal information were used to create the false returns. In several instances, one person in a family group knew Jackson because he sold them illegal drugs. That person would recruit others in his or her circle of friends and family to provide personal information;
 (3) Witnesses from law enforcement, the U.S. Postal Service, financial institutions, and internet providers, who testified about various steps in the process of filing the fraudulent returns.

#### a. Testimony of Destinee McBride

Destinee McBride's testimony was the most important evidence against Jackson. She described how he recruited her to provide an internet connection for him. He drove her repeatedly to a house in the Buffalo suburbs where she logged on and he took over—typing in the information for one false tax return after another. Jackson's principal line of defense has been that McBride and members of her family are responsible for the false returns and have lied in order to shift the blame to him.

McBride's testimony was supported in many details by the testimony of the other two groups of witnesses. Jackson's use of the exactly the same income and withholding figures in many false returns supported McBride's testimony that one person—Jackson—was responsible for the fraudulent scheme.

### b. Testimony of DeWayne Vass

Vass testified pursuant to a cooperation agreement. He pled guilty to one count of wire fraud on May 9, 2013. His plea agreement required him to testify at Jackson's trial in exchange for a recommendation of lenient treatment from the Government. *United States v. Vass*, No. 1:13-cr-86 (W.D.N.Y. May 9, 2013) (Doc. 3).

When Vass appeared on the stand, he was reluctant to answer the prosecution's questions. Initially, he answered some questions and refused to answer others. The court held a bench conference at which the prosecution advised that they intended to introduce Vass's grand jury testimony as past recollection recorded pursuant to F.R.E. 803(5). The defense agreed that this was the correct approach. The court referred to the need for foundational testimony. The prosecution indicated that they would also attempt to refresh the witness's recollection.

After the bench conference, there were no questions from the Government which would have established the foundational requirements for Rule 803(5). These would have been that Vass's prior statements concerned facts which he once knew but no longer recalled, that the statements occurred while the matter was fresh in his mind, and that they reflected his knowledge accurately. The Government established only that Vass recalled appearing and answering questions. There were no objections from the defense to the admission of hearsay. Both sides treated the grand jury testimony as past recollection recorded. The court did not prompt counsel to object or otherwise intervene.

On cross-examination Vass answered all questions put to him by attorney Cotter. He was impeached by prior convictions. He answered questions about his participation in the offenses and his relationship with Jackson.

### c. The Discovery Dispute

Jackson makes it clear in his filing that he has no objection to the Government's production of Jencks Act material. He objects to limitations that the court placed on the ability of the defense to turn it over to him. He writes, "[a]lthough the gov't fulfilled its obligation to disclose pursuant to 18 U.S.C. [§] 3500[,] Jen[c]ks v. United States, (353 U.S. 657), and its progeny, however the gov't failed in its obligation to deliver said materials, so that the defendant

3

had an opportunity to adequately consider the same in preparing his cross-examination and preparing a defense." (Doc. 117 at 55.)

The dispute over delivery of the § 3500 material originates with the Government's request for a protective order, which the court issued on October 22, 2014. (Doc. 45.) Jackson was not permitted to receive copies of the § 3500 material. He and his attorney were permitted to review and discuss the materials. Jackson complains that as a consequence of this limitation, he was "handcuffed to trial counsel['s] alleged trial strategies that did not include in violation of the defendant['s] immediate trial instructions to introduce to the record for the trial court and the jurors['] thorough review, being the following . . . ." (Doc 117 at 55.) Jackson identifies six groups of documents which he was unable to introduce at trial because he lacked access to copies. He contends that timely access to the documents would have allowed him to highlight inconsistencies in the Government's case.

### d. Ineffective Assistance of Counsel

Jackson makes many claims of ineffective assistance of counsel against Cotter. There are fifteen such claims. They include allegations that Cotter failed to follow Jackson's directions and failed to object and otherwise defend him at the trial.

### e. Other Claims

Jackson raises many other issues. Not all are easy to understand. They do not bear directly on the motions to terminate Cotter's representation. The court will not recount each.

### II. Analysis

Local Rule of Criminal Procedure 48 provides that "[p]artial representation of a criminal defendant is not permitted in this Court, and an attorney who has appeared as the attorney of record may withdraw only for good cause shown." The rule promotes judicial economy and serves the purpose of the Sixth Amendment, which guarantees the accused representation throughout the criminal process. U.S. Const. amend. VI. Ethical rules governing attorney conduct include similar requirements for withdrawal in the event of a conflict of interest. See Rules of Prof. Con., Rule 1.7, NY ST RPC Rule 1.7 ("... a lawyer shall not represent a client if a reasonable lawyer would conclude that ... there is a significant risk that the lawyer's professional

judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.")

"Good cause" for withdrawal is a discretionary standard with sufficient flexibility to permit the courts to consider the range of problems which can arise between parties and their counsel. Particularly in criminal cases involving appointed counsel, disputes over the conduct of the defense arise with great frequency. *United States v. Moree*, 220 F.3d 65, 71 (2d Cir. 2000). As in this case, these disputes usually take the form of accusations of ineffective assistance of counsel. A rule which would permit the discharge of defense counsel whenever the defendant makes such a claim would make it difficult to bring criminal cases to resolution in a timely manner. *Id.*

On the other hand, the presence of an actual conflict of interest between lawyer and client generally requires withdrawal because the lawyer faced with a choice between advocacy and defending or advancing his own interests is incapable of providing appropriate representation. *Lopez v. Scully*, 58 F.3d 38, 41 (2d Cir. 1995). Since "actual conflict of interest" is a term of art which affects the burden of proof in post-conviction relief cases, *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980), determining whether an actual conflict is present is a matter of considerable significance. The critical characteristic is whether the conflict is one that "adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002). For purposes of disqualification or withdrawal, an actual conflict must arise from a divergence of interests "with respect to a material factual or legal issue or to a course of action." *Moree*, 220 F.3d at 69 (quotation omitted). Criticism of an attorney's performance by his client does not create an actual conflict even in cases in which the attorney must defend or explain his conduct. *See United States v. White*, 174 F.3d 290, 296 (2d Cir. 1999) ("[W]e decline to adopt any broad rule that would suggest that, simply by expressing dissatisfaction with his attorney's performance, a defendant can create a 'conflict of interest' that can be said to require the attorney to choose between advancing the attorney's own cause and that of her client.").

The issue in this case is whether there is evidence of an actual conflict of interest sufficient to require the withdrawal of Cotter as Jackson's attorney. The court concludes that at this stage of the case—as the court and the parties approach the sentencing hearing—there is no actual conflict of interest. Jackson's complaints about his attorney's conduct go to disagreements over decisions made during the trial. As frequently occurs, the defendant and his

attorney differ over the wisdom of various decisions. But there is no evidence that attorney Cotter has ever had any personal interest in an outcome which differed from his client's. Both share the same interest in obtaining an acquittal and, failing that, a lenient sentence. There is no divergence of interests which is the hallmark of an actual conflict.

Even when the attorney offers a different account of the facts in order to protect himself from a complaint of ineffective assistance, no actual conflict arises in the absence of a claim of coercion or differing interests. *See Moree*, 220 F.3d at 69; *Vasquez v. Parrott*, 397 F.Supp.2d 452 (S.D.N.Y. 2005). In this case, there is no need for Cotter to respond to the many claims made by Jackson since none of them concern issues presented by the Sentencing Guidelines and the other statutory factors which the court and the parties must consider as they address the issue of sentencing.

As they approach the sentencing hearing, Jackson and Cotter have no actual conflict of interest. Both seek as low a sentence as possible. On appeal or through a § 2255 proceeding, Jackson may renew his complaints about how his case was handled. But those are issues for another day. The issues which require the attorney's attention at this time are identifying any areas of mistake or disagreement in the presentence report and building a case for a lenient sentence either through departure or variance.

**III.   Conclusion**

The court DENIES the motion by attorney Cotter to withdraw (Doc. 118) and the motion by Clifton Jackson for a new attorney (Doc. 117). Sentencing remains scheduled for June 29, 2015.

Dated this 22nd day of May, 2015.

Geoffrey W. Crawford, Judge
United States District Court