UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:13-CR-98 |
| | ) | |
| CLIFTON JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER ON MOTION FOR NEW TRIAL**
**(Doc. 127)**

Following defendant Clifton Jackson's conviction on multiple charges related to the filing of fraudulent tax returns, Jackson has filed a motion for new trial. He asserts that the Government failed to turn over evidence in its possession that a co-conspirator—Dwayne Vass—was involved in an unrelated drug conspiracy while out on bail and preparing to testify against Jackson.

**I.      Facts**

The parties are in substantial agreement about the facts. Jackson was indicted in April 2013 on multiple counts of conspiracy, fraud, false claims, aggravated identity theft and social security fraud. (Doc. 7.) All of these charges arose out of a scheme through which Jackson and his co-conspirators filed approximately eighty-five fraudulent tax returns using TurboTax software. All three of the co-conspirators testified against Jackson at his trial. One of these was Dwayne Vass.

Prior to Vass's testimony, the Government disclosed *Brady/Giglio* information[1] including Vass's criminal record for drug offenses. This included three prior felony drug convictions: two in 2007 and one in 2004. Both sides questioned Vass about these convictions.

---

[1] In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that the government has an obligation under the Due Process Clause to disclose material evidence to a criminal defendant. This applies to information regarding the defendant's guilt or innocence as well as information that might alter the jury's evaluation of the credibility of a significant prosecution witness. *Id.*; *Giglio v. United States*, 405 U.S. 150, 154 (1972).

What was not disclosed to Jackson was information about Vass developed in a separate investigation against Marcel Worthy, which led to the indictment of Worthy and sixteen others for drug trafficking activity between June 2013 and July 2014. Although Vass was not indicted in the Worthy case, he played a cameo role as someone who assisted the defendants with their illegal activities on June 25 and June 26, 2014. On both dates, a wiretap on Worthy's cell phone captured Vass calling Worthy to discuss the distribution of cocaine. It is fair to conclude that the Worthy investigation turned up evidence of Vass's continuing involvement in the drug trade in Buffalo despite his convictions and jail terms in 2004 and 2007.

The information developed in the Worthy case was not turned over in the course of *Brady* production in Jackson's case. Although the reasons are irrelevant, it is apparent that the prosecutors working on Jackson's case were a different group from those working on the Worthy case. Both sides agree that the wiretap information should have been turned over to assist Jackson's attorney in his efforts to impeach Vass on cross-examination.

## II.   Analysis

The only issue in dispute is whether the information about Vass developed in the Worthy case was sufficiently material that its non-disclosure requires a new trial in this case. The rule in this circuit requiring a showing of actual prejudice in the event of a *Brady* violation is established by *United States v. Persico*, 645 F.3d 85 (2011). "[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or is subject to extensive attack by reason of other evidence, the undisclosed evidence may properly be viewed as cumulative, and hence not material, and not worthy of a new trial." *Id.* at 111.

The court starts with the details of the *Brady* information which was not provided to Jackson. It appears at three points in a much longer narrative account of various phone calls to Worthy whose phone was tapped. The three calls involving Vass are described as follows:

> At 7:47 p.m. [on June 25], DWAYNE VASS a/k/a BLACK WEEZE using 716-812-8664 called WORTHY who told VASS to meet WORTHY at "439" Wyoming Avenue. At 8:13 p.m., WORTHY called and arranged to meet up with VASS at 439 Wyoming Avenue. It is believed that WORTHY and VASS met in furtherance of the DTO after WORTHY was supplied with cocaine.

> At 2:00 p.m. [on June 26, 2014], WORTHY called DWAYNE VASS a/k/a BLACK WEEZE at 716-812-8664 and arranged to be picked up. [Worthy did not normally drive himself due to lack of a license.]
>
> At 5:07 p.m. [on June 26, 2014], WORTHY received a call from DWAYNE VASS a/k/a BLACK WEEZE from 716-812-8664. In the background, someone can be heard saying, "I ain't scoop it all up, I don't know, I see the cookies or something." It is believed that after identifying law enforcement in the area, VASS, WORTHY and others were attempting to "scoop it all up," meaning to clean up any cocaine from that location to avoid the narcotics being intercepted by law enforcement. (Doc. 127 at 13-15.)

If this affidavit had been supplied to defense counsel in discovery, it could have supplied the basis for questions directed to Vass concerning prior specific instances of conduct bearing on his character for truthfulness, as permitted by Federal Rule of Evidence 608. The excerpts were not themselves admissible both because of the hearsay rule and because admission would violate the rule against proof of matters relating to credibility by extrinsic evidence. But it cannot be ruled out that the defense could have cross-examined Vass about his involvement with the Worthy gang and obtained answers that Vass continued to be involved in drug trafficking as late as June 2014.

In order to make a discretionary decision about whether the affidavit is sufficiently material to the issue of guilt to require a new trial, the court considers two issues: the cross-examination which occurred in the absence of the *Brady* material and the entire scope of the evidence against Jackson.

At trial in this case, defense counsel cross-examined Vass on a number of credibility issues. He was questioned concerning his decision to cooperate under pressure from the Government (Doc. 117 at 35-36); his reluctance to testify against Jackson (*id.* at 36); the alleged misconduct of two of his cousins who were thought to be "doing taxes back in 2010" (*id.* at 37); his incarceration and parole (*id.*); prior false statements to the investigating agents (*id.* at 38); and his prior conviction for a drug offense which resulted in a six-year sentence (*id.* at 39). In short, the uncontroverted evidence on cross-examination was that Vass had been convicted of a drug felony resulting in a long sentence, that he had been convicted previously of another felony, and that he had initially lied to the agents investigating the crimes in question.

The evidence of other witnesses against Jackson was very great. Without rehearsing the entire case, it is sufficient to note that two other co-conspirators, Destinee McBride and Sheri

3

Becirovic, described Jackson's role as leader of the conspiracy in great detail. The fraudulent tax returns were admitted into evidence. They were extremely similar in that most showed the same amount of fraudulent income and the same amount of fraudulent withholding. These figures were tied by testimony directly to Jackson. Through the accumulation of more than a week of detailed testimony, the Government was able to identify Jackson as the common element in the various activities and documents which led to the filing of the multiple false returns.

As this discussion indicates, the court is satisfied that the omission of the Worthy material about Vass from disclosure in this case made no appreciable difference to the outcome. Vass was impeached and discredited before the jury for the same conduct described in the Worthy material. The only difference was that the Worthy material was more recent in time— involving conduct that took place after Vass's most recent incarceration—and for that reason may have been more marked in its potential effect on the jurors. On the other hand, Vass was not charged in the Worthy case and the three brief phone conversations with Worthy were more suggestive than fully incriminatory.

The Worthy material shrinks in its potential material impact when set against the great mass of other evidence of defendant's guilt which had nothing at all to do with Vass and his testimony. The testimony of Destinee McBride and Sheri Becirovic, buttressed by the uncontroverted evidence about how online tax filing works, would have been sufficient in all likelihood to result in Jackson's convictions on the same charges.

With these concerns in mind, the court concludes that the undisclosed telephone calls made by Vass in the Worthy case were not material to Jackson's defense and that the failure of the Government to disclose this material prior to trial should not result in a new trial. *Persico*, 645 F.3d at 111.

### III.   Conclusion

Defendant's motion for a new trial (Doc. 127) is DENIED.

Dated this 25th day of June, 2015.

Geoffrey W. Crawford, Judge
United States District Court